Brent O. Hatch (5715)
hatch@hatchpc.com
Adam M. Pace (14278)
pace@hatchpc.com
**HATCH LAW GROUP, PC**
22 East 100 South, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 869-1919

*Counsel for Plaintiff and the Proposed Class*

Gary F. Lynch (*Pro Hac Vice* to be Filed)
gary@lcllp.com
Michael H. Sampson (*Pro Hac Vice* to be Filed)
mike@lcllp.com
Nicholas A. Colella (*Pro Hac Vice* to be Filed)
nickc@lcllp.com
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-924

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KRYSTLE SCHNEIDER,** *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>**INSTRUCTURE, INC. d/b/a CANVAS BY INSTRUCTURE**, *a Utah Corporation*,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br><br><br>Civil Action No. 2:26-cv-00417<br><br>Judge _____ |

Plaintiff Krystle Schneider brings this Class Action Complaint on behalf of herself, and all others similarly situated, against Defendant Instructure, Inc. d/b/a Canvas by Instructure ("Defendant" or "Instructure"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE CASE

1.   Instructure "is an education technology company that develops and operates Canvas, a cloud-based learning management system used by schools, universities, and other institutions to deliver, store, and manage online course content and related student information."[1]

2.   For the second time in a month, Instructure reportedly has succumbed to a cyberattack.[2] "The hacker behind the [most recent] breach … claims to have stolen 280 million records tied to students and staff from 8,809 colleges, school districts, and online education platforms."[3]

3.   Now, Plaintiff brings this class action against Instructure for its failure to properly secure and safeguard Plaintiff's and other similarly situated individuals ("Class Members") personally identifying information, including names, e-mail addresses, and student identification numbers, as well as messages among users (collectively "PII" or "Private Information").

---

[1]   Lawrence Abrams, "Instructure hacker claims data theft from 8,800 schools, universities," *BleepingComputer* (May 5, 2026), https://www.bleepingcomputer.com/news/security/instructure-hacker-claims-data-theft-from-8-800-schools-universities/ (last visited May 7, 2026). *See also* "List of Universities, School Districts Impacted By Nationwide Canvas Hack," *available at* https://www.newsweek.com/list-universities-school-districts-nationwide-canvas-hack-cyberattack-instructure-shinyhunters-11927077 (last visited May 8, 2026) ("List of Universities") ("Canvas, a cloud-based platform used by more than 30 million users globally, acts as a central hub for grades, assignments and communication between students and staff.

[2]   *See* List of Universities, *supra* n. 1 ("This is the second cyber incident this month involving Canvas' parent company, Instructure, which highlights persistent vulnerabilities across a platform used by millions of students.").

[3]   Abrams, *supra*. n.1. *See also* List of Universities, *supra* n.1. ("Canvas, a cloud-based platform used by more than 30 million users globally, acts as a central hub for grades, assignments and communication between students and staff."

4.      Plaintiff and Class Members are individuals who were required to indirectly and/or directly provide Defendant with their Private Information.  By collecting, storing, and maintaining Plaintiff's and Class Members' Private Information, Instructure has a resulting duty to secure, maintain, protect, and safeguard the Private Information that it collects and stores against unauthorized access and disclosure through reasonable and adequate data security measures.

5.      Despite Instructure's duty to safeguard the Private Information of Plaintiff and Class Members, their Private Information in Defendant's possession was compromised when a hacker using the online moniker 'ShinyHunters' posted on its dark-web extortion site on or about May 3, 2026, that it stole approximately 3.65 terabytes of sensitive data, belonging to "275 million students, teachers, and other individuals at close to 9,000 education institutions worldwide, and that Instructure's Salesforce instance was also compromised" (the "First Data Breach").[4]

6.      The First Data Breach occurred when cybercriminals infiltrated Defendant's inadequately protected network servers and stole Private Information that was being kept on those servers.

7.      In response to the First Data Breach, Instructure stated:  "While we continue actively investigating, thus far, indications are that the information involved consists of certain identifying information of users at affected institutions, such as names, email addresses, and student ID numbers, as well as messages among users.  At this time, we have found no evidence

---

[4]    Ionut Arghire, "EdTech Firm Instructure Discloses Data Breach Amid Hacker Leak Threats," *SecurityWeek* (May 4, 2026), *available at* https://www.securityweek.com/edtech-firm-instructure-discloses-data-breach/ (last visited May 8, 2026).

that passwords, dates of birth, government identifiers, or financial information were involved. If that changes, we will notify any impacted institutions."[5]

8.      "On the afternoon of May 7, [2026,] Canvas was once again rendered nonfunctional [(the "Second Data Breach")]. According to multiple student newspapers … a message from ShinyHunters appeared on user dashboards threatening to release stolen data.[6] Upon information and belief, that message looked as follows:



9.      Instructure maintained the PII of Plaintiff and Class Members in a negligent and/or reckless manner. In particular, the PII was maintained on Instructure's computer system and

---

[5]   https://status.instructure.com/ (May 6, 2026) (last visited May 8, 2026) ("Status").

[6]   Abby DiSalvo, "Duke among 9,000 schools affected by Canvas cyberattack," *The Chronicle* (May 7, 2026),   *available   at*   https://www.dukechronicle.com/article/duke-university-among-institutions-affected-by-canvas-cyberattack-shinyhunters-instructure-hack-data-leak-cybersecurity-20260507 (last visited May 8, 2026).

network in a condition vulnerable to cyberattacks.  Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

10.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

11.     As a result, Plaintiff's and Class Members' PII was compromised by an unauthorized third-party.  Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

12.     As a direct and proximate result of Defendant's failure to implement and follow basic security procedures, Plaintiff's and Class Members' Private Information is now in the hands of cybercriminals.

13.     Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their privacy, and similar forms of criminal mischief, risks which may last for the rest of their lives.  Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

14.     Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant breached its duties and obligations in one or more of the following

ways: (i) failing to design or being negligent in the design, implementation, monitoring, and maintaining reasonable network safeguards against foreseeable threats; (ii) failing to design, implement, and maintain reasonable data retention policies; (iii) failing to adequately train staff on data security; (iv) failing to comply with industry-standard data security practices; (v) failing to warn Plaintiff and Class Members of Defendant's inadequate data security practices; (vi) failing to encrypt or adequately encrypt the Private Information; (vii) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (viii) failing to utilize widely available software able to detect and prevent this type of attack; and (iv) otherwise failing to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.  These failures rendered Defendant an easy target for cybercriminals.

15.    Plaintiff and the Class Members are victims of Defendant's negligence and inadequate cyber security measures.  Specifically, Plaintiffs and members of the proposed Class trusted Defendant with their Private Information, but Defendant betrayed that trust.  Defendant failed to properly use reasonable industry standard security practices to prevent the First and/or Second Data Breaches (together, the "Data Breaches").

16.    Plaintiff, on behalf of herself and all others similarly situated, alleges a claim for negligence arising from the Data Breaches.  Plaintiff seeks damages and injunctive relief, including the adoption of reasonably sufficient practices to safeguard the Private Information in Defendant's custody to prevent incidents like the Data Breaches from reoccurring in the future, and for Defendant to provide identity theft protective services to Plaintiff and Class Members for their lifetimes.

17.     Instructure claims to "hold ourselves accountable for our choices, our actions, and our work, and we stand behind our products and services."[7]  It has failed to do so, here.  As such, it is up to Plaintiff, Class Members, and this Court to hold Instructure accountable.

## **PARTIES**

18.     Ms. Schneider is an adult citizen of the state of Washington, who currently resides in Spokane, Washington.

19.     Ms. Schneider's Private Information was entrusted to Defendant with the reasonable expectation that Defendant would keep such Private Information confidential and secure from unauthorized access.

20.     Ms. Schneider greatly values her privacy and is very careful about sharing her sensitive Private information.  She diligently protects her Private Information and stores any documents containing Private Information in a safe and secure location.

21.     At the time of the Data Breaches, Defendant retained Plaintiff's Private Information in its databases and other systems.  These databases and other systems were inadequately secured, which made it possible for Plaintiff's Private Information to be accessed and stolen by cybercriminals in the Data Breaches.

22.     Ms. Schneider further believes that her Private Information, and that of Class Members, is likely to be, or has been, sold and disseminated on illicit criminal networks, including through the Dark Web, following the Data Breaches.

23.     Ms. Schneider has made reasonable efforts to mitigate the impact of the Data Breaches, including but not limited to researching the Data Breaches and working to assess what

---

[7]     "Who is Instructure," *Instructure*, https://www.instructure.com/about (last visited May 8, 2026).

data of hers may have been compromised.  She already has spent considerable time dealing with the Data Breaches, valuable time that she otherwise would have spent on other activities.

24.    Ms. Schneider anticipates spending considerable resources, including time and money, on an ongoing basis in an effort to mitigate and address harms caused by the Data Breaches.

25.    Due to the Data Breaches, Plaintiff Schneider is at a present risk and will continue to be at risk of identity theft and fraud for the foreseeable future.

26.    The risk of identity theft is impending and has materialized, as there is evidence that Plaintiff's and Class Members' PII was targeted, accessed, and misused, including through publication and dissemination on the Dark Web.

27.    Ms. Schneider has a continuing interest in ensuring that her Private Information, which remains in Defendant's possession, is protected and safeguarded from future breaches.

28.    The Data Breaches have also caused Ms. Schneider to suffer fear, anxiety, and stress about her Private Information now being in the hands of cybercriminals and the potential results of it being disseminated publicly.

29.    As a direct and traceable result of the Data Breaches, Ms. Schneider suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breaches, including, but not limited to, (a) loss of time and money; (b) loss of privacy and deprivation of the right to exclude others from accessing her Private Information due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private

Information has been stolen and likely published on the Dark Web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff and (g) other economic and non-economic harm.

30.     As a result of the Data Breaches, and the sensitivity of the Private Information compromised, Plaintiff will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

31.     Defendant is a Delaware corporation with its principal place of business at 6330 South 3000 East, Suite 700, Salt Lake City, Utah 84121. Defendant is a citizen of Utah.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.

33.     This Court has personal jurisdiction over Defendant because a substantial part of the events, omissions, and acts giving rise to the claim alleged herein occurred in this District and Defendant resides in this District.

34.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claim alleged herein occurred in this District and Defendant resides in this District.

9

## FACTUAL BACKGROUND

35.     In addition to other education technology tools, Defendant operates Canvas, which is used by universities, colleges, and other schools across the United States.  Faculty can use Canvas to track students' Private Information, including, for example, names, profile pictures, email addresses, and other communication channels (such as a phone number for text messaging). They can also use Canvas to message students, assign work, and display grades.  Students can also use Canvas for messaging and can also, *inter alia*, access and submit assignments through the system.

36.     Upon information and belief, schools contract directly or indirectly with Instructure to license the use of Canvas and make it available to their respective faculty members and students. The consideration paid for access to Canvas is substantial and, upon information and belief, may be hundreds of thousands to millions of dollars.

37.     Plaintiff and Class Members are and/or were customers of Defendant.

38.     As a condition of obtaining Defendant's services, Plaintiff and Class Members directly or indirectly entrusted Instructure with their sensitive Private Information.

39.     Plaintiff and Class Members value the confidentiality of their Private Information and, accordingly, have taken reasonable steps to maintain the confidentiality of their Private Information.

40.     In entrusting their Private Information to Defendant, Plaintiff and Class Members reasonably expected that Defendant would safeguard their highly sensitive information.

41.     By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Instructure assumed equitable and legal duties to safeguard Plaintiff's and Class

Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

42.     Despite these duties, Instructure failed to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information and ultimately allowed threat actors to breach its computer systems and exfiltrate Plaintiff's and Class Members' Private Information stored therein.

**THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE**

43.     Instructure understood that the Private Information it collects was sensitive and of significant value to those who would use it for wrongful purposes.

44.     Instructure also knew that a breach of its computer systems, and exposure of the Private Information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

45.     These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, and many others.

46.     Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[8]

47.     As the U.S. Federal Trade Commission (the "FTC") recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and

---

[8]   Brian Krebs, "The Value of a Hacked Company," *Krebs on Security* (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited May 8, 2026).

11

financial fraud.[9] The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individual, businesses, and government entities in the United States.  In 2023 alone, there were 6,077 recorded breaches exposing more than 17 billion records - representing a 19.8-percent year-over-year increase in the United States compared to 2022.[10]  This trend is mirrored in identity theft complaints, which nearly doubled over a four-year span - from 2.9 million reports in 2017 to 5.7 million in 2021.[11]

48.    Indeed, a 2022 poll of security executives predicted an increase in attacks over the next two years from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated.  Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[12]

49.    In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years.  For instance, 2024 had the second-highest number of data compromises in the United States in a single year since such instances began being tracked in 2005.[13]

---

[9]  "What To Know About Identity Theft," *Federal Trade Commission Consumer Advice*, https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited May 8, 2026)

[10]  "Flashpoint 2024 Global Threat Intelligence Report," Flashpoint, *available at* https://go.flashpoint.io/2024-global-threat-intelligence-report-download (last visited May 8, 2026).

[11]  "Facts + Statistics: Identity Theft and Cybercrime," *Insurance Information Institute*, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited May 8, 2026) ("Facts + Statistics").

[12]  Chuck Brooks, "Alarming Cyber Statistics For Mid-Year 2022 That You Need to Know," *Forbes* (June 3, 2022), https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year-2022-that-you-need-to-know/?sh=176bb6887864 (last visited May 8, 2026).

[13]  Facts + Statistics*, supra.*

50.    The ramifications of Instructure's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe.  Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.  According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years.  As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[14]

51.    Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft.  Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear-phishing.  In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

52.    The specific types of personal data compromised in the Data Breaches makes the information particularly valuable to thieves and leaves Plaintiff and other Class Members especially vulnerable to identity theft and more.

53.    Based on the value of Plaintiff's and Class Members' PII to cybercriminals, Instructure knew or should have known the importance of safeguarding the PII entrusted to it and

---

[14]    "Report to Congressional Requesters, Personal Information," U.S. Government Accountability Office (June 2007), *available at* https://www.gao.gov/new.items/d07737.pdf (last visited May 8, 2026).

13

of the foreseeable consequences if its data security systems were breached. Instructure failed, however, to take adequate cyber security measures to prevent the Data Breaches from occurring.

**INSTRUCTURE BREACHED ITS DUTY TO PROTECT PLAINTIFF'S AND CLASS MEMBERS' PRIVATE INFORMATION**

54.    In early May 2026, Instructure was the target of a cybersecurity incident(s) that compromised its data network.[15]

55.    The Private Information stolen in the Data Breaches includes individuals' names, email addresses, and student identification numbers, as well as messages among users.[16]

56.    Instructure has not issued, and does not appear to have issued, any notification, or disclosure to affected individuals, regulatory authorities, or the public regarding the full scope, nature, impact, or potential consequences of Data Breaches.

57.    The cyberattack(s) was expressly designed to gain access to private and confidential data of specific individuals, including (but not limited to) the PII of Plaintiff and the Class Members. Based on publicly available information, it appears that the cybercriminals were successful in exfiltrating sensitive information from Defendant's data network.

58.    All in all, the Private Information of approximately 275 million individuals was compromised in the Data Breach.

59.    The Data Breach occurred as a direct result of Instructure's failure to implement and follow basic security procedures to protect its current and former users' Private Information that it had collected and stored.

---

[15]    *See* Status, *supra.*

[16]    *See id.*

**INSTRUCTURE FAILED TO COMPLY WITH FTC GUIDELINES**

60.     Instructure is prohibited by the Federal Trade Commission Act (the "FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45. The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

61.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[17]

62.     Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems:[18]

    a.     Identify all connections to the computers where sensitive information is stored.

    b.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

    c.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting business.

    d.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should

---

[17]   "Start with Security – A Guide for Business," *United States Federal Trade Comm*ission, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 8, 2026).

[18]   "Protecting Personal Information: A Guide for Business," *United States Federal Trade Commission*, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed May 8, 2026).

15

consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.  Pay particular attention to the security of their web applications - the software used to give information to visitors to their websites and to retrieve information from them.   Web applications may be particularly vulnerable to a variety of hack attacks.

f.  Use a firewall to protect their computers from hacker attacks connected to a network, especially the internet.

g.  Determine whether a border firewall should be installed where the business' network connects to the internet.  A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored.  Set access controls - settings that determine which devices and traffic get through the firewall - to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, it should be reviewed periodically;

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.  Monitor outgoing traffic for signs of a data breach.  Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user.  If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

63.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[19]

---

[19]    *See id.*

64.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65.    Instructure failed to properly implement basic data security practices.  Instructure's failure to employ reasonable and appropriate measures to protect against unauthorized access to its customers' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

66.    Instructure was at all times fully aware of its obligations to protect the PII of its customers given the reams of PII that it had access to.  Instructure was also aware of the significant repercussions that would result from a failure to properly secure the Private Information it maintained.

**INSTRUCTURE'S FAILURE TO PREVENT, IDENTIFY, AND TIMELY REPORT THE DATA BREACHES**

67.    Instructure failed to take necessary precautions and failed to employ adequate measures necessary to protect its computer systems against unauthorized access and keep Plaintiff's and Class Members' Private Information secure.

68.    The Private Information that Instructure allowed to be exposed in the Data Breaches is the type of private information that Instructure knew or should have known would be the target of cyberattacks.

69.    Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[20] Instructure failed to disclose

---

[20]    *See id.*

that its systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

70.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[21]  Immediate notification to individuals impacted by a data breach is critical so that those impacted can take measures to protect themselves.

71.     Here, Instructure has acted inexcusably by failing to provide timely and/or adequate notice to the individuals whose personal information was compromised in the Data Breaches, despite its knowledge of the incident(s) and its obligations to safeguard such information.

72.     Plaintiff and Class Members remain in the dark regarding what specific data was stolen, the particular malware used, and what steps are being taken to secure their PII in the future. Thus, Plaintiff and Class Members are left to speculate as to where their PII ended up, who has used it, and for what potentially nefarious purposes.  Indeed, they are left to further speculate as to the full impact of the Data Breaches and how Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

**PLAINTIFF AND CLASS MEMBERS SUFFERED DAMAGES**

73.     The ramifications of Instructure's failure to keep Private Information secure are long-lasting and severe.  Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

74.     Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or protected against future misuse.  For this reason,

---

[21]     *See id.*

18

Plaintiff and Class Members will need to maintain heightened measures for years, and possibly their entire lives as a result of Defendant's conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breaches.

75.    PII remains of high value to criminals, as evidenced by the prices they will pay through the Dark Web. Numerous sources cite Dark Web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[22] "Fullz" packages, which includes "extra information about the legitimate credit card owner in case" the scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the Dark Web.[23]

76.    Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the Data Breaches. From a recent study, 28 percent of individuals affected by a data breach become victims of identity fraud - this is a significant increase from a 2012 study that found only 9.5 percent of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3 percent.[24]

---

[22]    "Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web", *Armor* (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/    (last visited May 8, 2026).

[23]    *Id*.

[24]    Stu Sjouwerman, "28 Percent of Data Breaches Lead to Fraud," *KnowBe4*, *available at* https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last visited May 8, 2026).

77.     Further, Plaintiff and Class Members have incurred and/or will incur out-of-pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the Data Breaches.

78.     Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues.  For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.[25]

79.     Plaintiff and Class Members are also at a continued risk because their information remains in Instructure's systems, which the Data Breaches showed are susceptible to compromise and attack and are subject to further attack so long as Instructure fails to take necessary and appropriate security and training measures to protect the Private Information in its possession.

80.     Plaintiff and Class Members have suffered emotional distress as a result of the Data Breaches, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

81.     As a result of Instructure's failure to prevent the Data Breaches, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breaches; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value

---

[25]   Cepeda Cheeks, "How to Report identity Theft," *ConsumerAffairs* (July 25, 2023), https://www.consumeraffairs.com/finance/how-to-report-identity-theft.html (last visited May 8, 2026).

of their Private Information; and continued risk to Plaintiff's and the Class Members' Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Instructure fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

82.     Furthermore, Defendant has not offered identity theft monitoring and/or identity theft protection for its customers.  This lack of resolution is inadequate when the victims will likely face many years of identity theft.

83.     The absence of and/or limited duration of these services is wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

## CLASS ALLEGATIONS

84.     Plaintiff brings this class action on behalf of herself and all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

85.     Plaintiff seeks to represent a class of persons to be defined as follows:

> All individuals in the United States whose Private Information was compromised in either and/or both of the Data Breaches (the "Class").

86.     Excluded from the Class are Instructure, its subsidiaries and affiliates, its officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

87.     This proposed class definition is based on the information available to Plaintiff at this time.  Plaintiff may modify the class definition in an amended pleading or when she moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

88.     **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, millions of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breaches.

89.     **Commonality:** This action involved questions of law and fact common to the Class.  Such common questions include but are not limited to:

    a.    Whether Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

    b.    Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached its duties thereby;

    c.    Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

    d.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

90.     **Typicality:** Plaintiff's claim is typical of the claims of the members of the Class. The claim of the Plaintiff and members of the Class are based on the same legal theory and arise from the same unlawful and willful conduct.  Plaintiff and members of the Class were all users of Canvas, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

91.      **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class-action litigation. The claim of Plaintiff and the Class Members are substantially identical as explained above.

92.      **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

93.      **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

94.     **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

95.     **Ascertainability:** Members of the Class are ascertainable.  Class Membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

## CLAIM FOR RELIEF

### COUNT I
### NEGLIGENCE
#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

96.     Plaintiff re-alleges the above allegations as if fully set forth herein.

97.     Plaintiff and Class Members provided their Private Information to Defendant as a condition of and/or in the course of obtaining services from Defendant and/or using its services, including, but not necessarily limited to, Canvas.

98.     Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in securing, safeguarding, storing, and protecting the PII collected from them from being compromised, lost, stolen, accessed and misused by unauthorized parties.  This duty includes, *inter alia*, designing, maintaining, overseeing, and testing Defendant's security systems to ensure that PII in Instructure's possession was adequately secured and protected.

99.     Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

24

100.    Defendant owed a duty of care to Plaintiff and Class Members to provide reasonable security, consistent with industry standards, to ensure that its systems and networks adequately protected their Private Information.

101.    Defendant had a special relationship with Plaintiff and Class Members.  Plaintiff's and Class Members' willingness to entrust Instructure with their Private Information as a condition of and/or in the course of obtaining services from Defendant and/or using its services was predicated on the understanding that Instructure would take adequate security precautions to protect their PII.

102.    By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

103.    Plaintiff and members of the Class entrusted Defendant with their PII with the understanding that Instructure would safeguard their information.

104.    Defendant's conduct also created a foreseeable risk of harm to Plaintiff and Class Members by failing to (1) secure its systems and exercise adequate oversight of its data security protocols; (2) ensure compliance with industry standard data security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the Data Breaches.

105.    Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its systems, and the importance of adequate security.  Defendant should have been aware of numerous, well publicized data breaches in the months and years preceding the Data Breaches.

106.   Defendant breached its common-law duty to act with reasonable care in collecting and storing the Private Information of its users, which exists independently from any contractual obligations between any parties.  Specifically, Defendant breached its common-law, statutory, and other duties to Plaintiff and Class Members in numerous ways, including by:

a.   failing to adopt reasonable data security measures, practices, and protocols;

b.   failing to implement data security systems, practices, and protocols sufficient to protect Plaintiff's and Class Members' PII;

c.   storing former Plaintiff's and Class Members' PII longer than reasonably necessary;

d.   failing to comply with industry-standard data security measures; and

e.   failing to timely disclose critical information regarding the nature of the Data Breaches.

107.   Defendant's failure to implement and maintain adequate data security measures to protect Plaintiff's and Class Members' Private Information created conditions conducive to a foreseeable, intentional criminal act in the form of the Data Breaches.  Plaintiff and Class Members did not contribute to the Data Breaches or the subsequent misuse of their Private Information.

108.   Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

109.   Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breaches.

26

110.    Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when.  Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

111.    Defendant has acknowledged that the Private Information of Plaintiff and Class Members was disclosed to unauthorized third persons as a result of the Data Breaches.

112.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members upon improper access and/or disclosure.

113.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have and will suffer damages including, but not limited to, (i) the loss of value of their Private Information and loss of opportunity to determine for themselves how their PII is used; (ii) the publication and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breaches, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long

27

as Instructure fails to undertake appropriate and adequate measures to protect it; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

114.   But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

115.   There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members.  The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

116.   As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breaches; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

28

117.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

118.   In addition, Instructure had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair … practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

119.   Defendant's violation of federal statutes, including the FTC Act, constitutes negligence *per se*.

120.   Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

121.   Plaintiff and Class Members are therefore entitled to damages, including restitution, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.   an Order certifying this action as a class action, appointing Plaintiff as class representative for the Class, and appointing her counsel to represent the Class;

29

B.      equitable relief enjoining Instructure from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.      equitable relief compelling Instructure to utilize appropriate methods and policies with respect to customer data collection, storage, and safety, and to disclose with specificity the types of PII compromised as a result of the Data Breaches;

D.      equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Instructure's wrongful conduct;

E.      an order directing Instructure to pay for not less than 10 years of credit monitoring services for Plaintiff and Class Members;

F.      an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.      an award of punitive damages, as allowable by law;

H.      an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.      an award of pre- and post-judgment interest on any amounts awarded; and

J.      such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 12, 2026                    Respectfully submitted,


                                        /s/ Brent O. Hatch
                                       HATCH LAW GROUP, PC
                                       Brent O. Hatch
                                       Adam M. Pace

                                       LYNCH CARPENTER LLP
                                       Gary F. Lynch
                                       Michael H. Sampson
                                       Nicholas A. Colella

                                       *Counsel for Plaintiff and the Proposed Class*